## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER CIENCIVA,** | : | **CIVIL ACTION NO. 3:20-CV-2045** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH M. BROZOWSKI,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Peter Cienciva brings suit against a dozen law enforcement defendants, asserting three claims for civil rights violations that allegedly occurred during his March 2019 arrest. All defendants have filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). We will grant defendants' motion.

## I.   Factual Background & Procedural History

### A.   Amended Complaint Allegations

In February 2019, Cienciva, a resident of Luzerne County, Pennsylvania, "was court ordered to live at Conewago Snyder." (See Doc. 22 ¶¶ 3, 9). According to court documents, Conewago Snyder is a "long-term care facility" and Cienciva sought to participate in its drug-treatment program "to address his drug addiction." (See Doc. 38-1 at 4, 5). Cienciva "was unfavorably discharged" from the facility on March 5, 2019. (See Doc. 22 ¶ 10). Although ordered to report to Lackawanna County Prison, Cienciva failed to appear. (See id. ¶¶ 11-12). Cienciva instead began living at a house on Old East Boulevard in Luzerne County for approximately a

week.  (<u>See</u> <u>id.</u> ¶ 13).  On March 6, 2019, an arrest warrant was issued for Cienciva. (<u>See</u> Doc. 38-1 at 12).

According to Cienciva, the United States Marshals Service ("Marshals") and "all individual defendants" located Cienciva at the house on Old East Boulevard on March 12, 2019.  (<u>See</u> Doc. 22 ¶ 14).  Named defendants are four Deputy United States Marshals, including Joseph M. Brozowski and Matthew Little, as well as two Marshals identified only as Alstrom and Persun; one individual referred to only as "SI Holst[1]"; seven task force officers ("TFOs") with last names Connors, Hegedus, Ference, Spiegel, Docket, Denucci, and Martin; and one defendant listed as "John Doe."  (<u>See</u> <u>id.</u> ¶¶ 5-7).[2]  According to the amended complaint, all defendants entered the house and handcuffed Cienciva to a pole.  (<u>See</u> <u>id.</u> ¶¶ 16-17).  They all proceeded to punch and kick Cienciva, striking him with their boots and firearms. (<u>See</u> <u>id.</u> ¶¶ 18-19).  Defendants allegedly wanted "before and after" photographs of Cienciva "as a souvenir," and took pictures of him.  (<u>See</u> <u>id.</u> ¶¶ 22-23).  Per Cienciva, "all of the [d]efendants were personally involved in the attack" and all defendants "punch[ed] and kicked him during his apprehension."  (<u>See</u> <u>id.</u> ¶¶ 27, 30).

Cienciva purportedly suffered a fractured jaw and injuries to his face as a result of the attack.  (<u>See</u> <u>id.</u> ¶¶ 20-21).  He spent seven days in the hospital for care—including five days in the intensive care unit—and his jaw was wired shut.

---

[1] The amended complaint uses two different spellings for this defendant's last name, switching between "Holt" and "Holst."  We use "Holst" in this memorandum, which we understand to be the correct spelling.  (<u>See</u> Doc. 29).

[2] Cienciva avers all defendants "reside in the Middle District of Pennsylvania."  (<u>See</u> Doc. 22 ¶ 2).

(<u>See</u> <u>id.</u> ¶¶ 24-25).  Following his return to Lackawanna County Prison, Cienciva spent eight weeks in the prison's medical wing.  (<u>See</u> <u>id.</u> ¶ 26).  Cienciva alleges he was never charged with any crime related to the arrest warrant that initiated the March 12 incident.  (<u>See</u> <u>id.</u> ¶ 28).  Cienciva was scheduled for release on September 25, 2019, but remained in custody until October 15, 2019 "in retaliation for the incident."  (<u>See</u> <u>id.</u> ¶ 29).

**B.    Procedural History**

Cienciva filed suit in November 2020, naming "Josepha [*sic*] M. Brozowski, Deputy United States Marshal," as well as "John Doe United States Marshalls [*sic*]."  (<u>See</u> Doc. 1).  On March 5, 2021, with no proof of service or entry of appearance for a defendant, the court issued a show-cause order for failure to serve the summons and complaint.  (<u>See</u> Doc. 4).  On March 15, Cienciva's counsel responded, noting he had sent requests for waiver of service to the Scranton office for the Marshals in January, but had not received any executed waivers.  (<u>See</u> Doc. 5 ¶¶ 4-12).  Counsel further stated an intention to serve the defendants forthwith and requested an additional 30 days to personally serve defendants.  (<u>See</u> <u>id.</u> ¶¶ 13-14).  The court provided a new deadline of April 22 to effect service.  (<u>See</u> Doc. 7 ¶ 2).  On March 18, counsel for defendant Brozowski filed a notice of appearance for Brozowski alone, as Brozowski was then the only named defendant.  (<u>See</u> Doc. 6).  On April 6, Cienciva filed a waiver of service from March 30, also only for Brozowski.  (<u>See</u> Doc. 8).

On May 28, Brozowski filed a motion to dismiss and to strike certain portions of the complaint.  (<u>See</u> Doc. 11).  On June 9, the parties submitted a case

management plan, in which counsel for Brozowski identified the name and title of

11 individuals in addition to Brozowski that had been disclosed to Cienciva.  (See

Doc. 17 at 4-5).  Brozowski also served initial disclosures on that date.  (See Doc. 45-

2).  On June 29, Cienciva filed an amended complaint, naming the aforementioned

11 additional defendants, and continuing to name Brozowski and a single "John

Doe" defendant.  (See Doc. 22).  The 11 new defendants are those named in the case

management plan: Alstrom, Little, and Persun as Deputy United States Marshals

sued in their individual capacities, (see id. ¶ 5), and defendants Holst, Connors,

Hegedus, Ference, Spiegel, Docket, Denucci, and Martin in both their individual

and official capacities, (see id. ¶¶ 6-7) (collectively, "additional defendants").  The

court denied Brozowski's motion to dismiss as moot in light of the amended

complaint.  (See Doc. 24).  On October 15, Brozowski's counsel filed a notice of

appearance on behalf of all named defendants.  (See Doc. 29).  Cienciva filed no

other waivers of service on the docket.

All named defendants filed a motion to dismiss the amended complaint on

November 8 pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

(See Doc. 35).  Cienciva attached a series of certified mail receipts to his opposition

brief.  (See Doc. 43-1).  These receipts, with dates of delivery ranging from July 8 to

August 30, indicate Cienciva sent certified mail to several locations.  It appears

Cienciva sent 12 items to named defendants, addressed to the Scranton office for

the Marshals, and the receipts reflect delivery dates from July 8 through July 19.

(See id. at 2, 28, 30, 32, 35, 37, 39, 41, 43, 45, 49, 51).  He also mailed 12 items to

defendants "c/o US Attorney General" and addressed to the Attorney General's

office in Washington, DC, with a delivery date of July 13.  (See id. at 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 46).  He further sent 12 items to defendants "c/o US Attorney General" addressed to the Department of Justice in Washington, DC, which were marked as delivered on August 30.  (See id. at 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72, 74).  Finally, on July 8, 2021, Cienciva mailed an item to Attorney Bruce Brandler in Harrisburg, Pennsylvania, who was then the United States Attorney for the Middle District of Pennsylvania.  (See id. at 4).  According to Cienciva, these receipts reflect his service of the amended complaint on the defendants.  (See Doc. 43 at 4).

**II.** **Legal Standards**

**A.** **Rule 12(b)(5)**

Rule 4 of the Federal Rules of Civil Procedure "sets forth the procedure by which a court obtains personal jurisdiction over the defendant." Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996).  The rule prescribes the process for properly issuing and serving a summons.  See FED. R. CIV. P. 4.  A party may challenge the method of service or the lack of service of process under Rule 12(b)(5).  See FED. R. CIV. P. 12(b)(5); 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1353 (3d ed. 2018).  In a challenge to sufficiency of service, the burden of proof lies on the party asserting the validity of service.  See Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted).  The movant must be specific in its objections and identify the exact manner in which the plaintiff has failed to satisfy the summons or service provision utilized.  See 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.33[1] (3d ed. 2013).

**B.**    **Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim

for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.   **Discussion**

Cienciva's amended complaint asserts three claims: excessive force in

violation of the Fourth Amendment to the United States Constitution (Count I);

conspiracy to deprive Cienciva of access to the courts in violation of the Due

Process Clause of the United States Constitution (Count II); and retaliation against

Cienciva for his exercise of his First Amendment rights (Count III).  Defendants

seek dismissal of all claims.

### A.   **Uncontested Claims**

At the outset, we will partially grant defendants' motion to dismiss as

unopposed.  Defendants move to dismiss Cienciva's claims under Section 1983

because "as [Cienciva] acknowledges, all [d]efendants were acting under color of

federal – not state law."  (See Doc. 38 at 2).  Cienciva indicates in his opposition

brief that he "has no objection to his claim for retaliation being dismissed."  (See

Doc. 43 at 10).  Cienciva also does not oppose dismissal of his conspiracy claim,

provided the dismissal is "without prejudice."[3]  (<u>See</u> <u>id.</u> at 10-12).  Finally, Cienciva agrees sovereign immunity bars his claims against federal actors in their official capacities.  (<u>See</u> <u>id.</u> at 19).  We will therefore grant the defendants' motion to dismiss Counts II and III of the amended complaint, as well as Count I to the extent it is brought against defendants in their official capacities.  Therefore, all that remains is a potential claim for excessive force under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) against defendants in their individual capacities.

### B.    Service

Defendants mount a layered attack on Cienciva's service of process.  All defendants contend Cienciva failed to serve either them or the United States within the time period provided by Rule 4(m).  All defendants except Brozowski further take issue with Cienciva's failure to serve them as individuals pursuant to Rule 4(e).

A plaintiff suing an officer or employee of the United States in an individual capacity must adhere to Rule 4(i)(3), which requires service on both the United States and service on the individual sued.  <u>See</u> FED. R. CIV. P. 4(i)(3).  To serve the United States, a plaintiff must serve a copy of the summons and complaint on the United States Attorney for the district where the action is brought by delivering the

---

[3] As detailed *supra*, Cienciva's claims are likely to encounter a time bar. Moreover, as the defendants are federal, not state, actors, Cienciva would also need to demonstrate that the <u>Bivens</u> cause of action should extend to his conspiracy theory.  Nonetheless, we will grant Cienciva's request and dismiss this claim without prejudice to whatever right Cienciva might have to reassert this claim in the future.

summons and complaint directly to the United States Attorney or a properly designated employee of the United States Attorney, or by sending the summons and complaint via registered or certified mail to the civil process clerk at the United States Attorney's Office.  <u>See</u> FED. R. CIV. P. 4(i)(1)(A).  In addition, the plaintiff must serve the Attorney General of the United States by registered or certified mail. <u>See</u> FED. R. CIV. P. 4(i)(1)(B).  The plaintiff must "also serve the officer or employee under Rule 4(e), (f), or (g)."  <u>See</u> FED. R. CIV. P. 4(i)(3).  Our court of appeals has ruled that if "money damages are sought from a public official in his individual capacity, service by certified mail . . . is insufficient."  <u>See</u> <u>Micklus v. Carlson</u>, 632 F.2d 227, 240 (3d Cir. 1980) (citations omitted).

Rule 4(e) lays out the method for serving an individual within a judicial district of the United States.  <u>See</u> FED. R. CIV. P. 4(e).  The rule allows a party to choose between three methods of delivery, including personal delivery to the individual, delivery to the individual's "dwelling or place of abode" with a person of suitable age, or delivery "to an agent authorized by appointment or by law to receive service of process."  <u>See</u> FED. R. CIV. P. 4(e)(2).  Alternatively, the plaintiff can follow state law for service.  <u>See</u> <u>id.</u>  In Pennsylvania, permissible methods for serving a defendant in person track the federal methods and allow for personal delivery, delivery to the defendant's residence, or delivery to an authorized agent. <u>See</u> PA. R. CIV. P. 402.  If a defendant is located outside of the Commonwealth, Pennsylvania allows service by mail.  <u>See</u> PA. R. CIV. P. 403, 404.

Regardless of the method of service required, Rule 4(m) provides the time limit for service, stating

> If a defendant is not served within 90 days after the
> complaint is filed, the court—on motion or on its own
> after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that
> service be made within a specified time.  But if the
> plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

See FED. R. CIV. P. 4(m).  Finally, Rule 4(*l*) specifies that how a plaintiff may prove

service, stating "[u]nless service is waived, proof of service must be made to the

court.  Except for service by a United States [M]arshal or deputy marshal, proof

must be by the server's affidavit."  See FED. R. CIV. P. 4(*l*).

In the instant matter, Cienciva did not serve the original complaint on the

United States within the time limit prescribed by Rule 4(m).  The record reflects

that the initial complaint was filed in November 2020, and Cienciva failed to serve

any defendant within the 90-day period.  (See Docs. 1, 4).  Nor did he serve the

United States on or before the second, court-imposed deadline of April 22, 2021.

(See Doc. 7).  He belatedly served the amended complaint on the United States via

certified mail in July 2021.  (See Doc. 43-1 at 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26,

46); see also FED. R. CIV. P. 4(i)(1).

Cienciva also failed to personally serve any of the named defendants

pursuant to Rule 4(e), and the current record indicates he still has not served

defendants under this rule.  Defendant Brozowski waived service in March 2021.

(See Doc. 8).  However, no other defendant waived, and binding Third Circuit case

law instructs that service by mail is not a sufficient means to serve a government

official sued in his personal capacity.  See Micklus, 632 F.2d at 240.  Thus, Cienciva's

proffered series of certified mail receipts to the Marshals office in Scranton does not

constitute proper service on the individual defendants.  Cf. FED. R. CIV. P. 4(*l*)

(requiring proof of service "by the server's affidavit").  Cienciva remonstrates that

he believed he properly served "an agent authorized by appointment or law" by

sending a copy to the government attorney who entered an appearance and waived

service for Brozowski, because he "was and is counsel of record."  (See Doc. 43 at 4-

5); see also FED R. CIV. P. 4(e)(2)(C).  Cienciva fails to recognize, however, that

government counsel entered an appearance and waived service *only* for defendant

Brozowski until October 15, 2021.  (See Docs. 6, 8, 29).  Government counsel

therefore was not counsel of record for any defendant, save Brozowski, until several

months after Cienciva alleges he served the amended complaint on the additional

defendants.

Having concluded that Cienciva has not properly served 11 of the 12

defendants, and that he untimely served the United States, we turn to Rule 4(m)

and whether good cause or other factors favor further extension of the time for

service, as Cienciva's opposition brief alternatively requests an opportunity to cure

any service defects.  (See Doc. 43 at 5).  Our court of appeals considers "three

factors in determining the existence of good cause under Rule 4(m): (1)

reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack

of timely service[;] and (3) whether plaintiff moved for an enlargement of time to

serve."  See Beautyman v. Laurent, 829 F. App'x 581, 583 (3d Cir. 2020)

(nonprecedential) (citing MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086,

1097 (3d Cir. 1995)).  The commentary to Rule 4 also specifies good cause may exist

when an extension is "necessary to correct oversights in compliance with the

requirements of multiple service in actions against the United States or its officers,
agencies, and corporations."  See FED. R. CIV. P. 4 advisory committee notes, 1993
amendment, subdivision (m).  If a plaintiff fails to show good cause, the court may
exercise its discretion to still grant an extension.  See MCI Telecomms., 71 F.3d at
1098; McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998).  Our
court of appeals also requires us to consider, in the absence of good cause, "whether
any other factors warrant extending time."  See Petrucelli v. Bohringer &
Ratzinger, 46 F.3d 1298, 1307 (3d Cir. 1995); Boley v. Kaymark, 123 F.3d 756, 758 (3d
Cir. 1997).  Those factors may include whether plaintiff is a *pro se* litigant, whether
the statute of limitations has run on any of plaintiff's claims, whether the defendant
has "actual notice of the legal action," and whether "the service required was of a
kind often found to be confusing."  See Chiang v. U.S. Small Bus. Admin., 331 F.
App'x 113, 116 (3d Cir. 2009) (nonprecedential); Veal v. United States, 84 F. App'x
253, 256 (3d Cir. 2004) (nonprecedential); see also Boley, 123 F.3d at 759 (running of
statute of limitations counsels in favor of discretionary extension).

    Initially, we conclude that Cienciva has not established good cause for an
extension.  Cf. Beautyman, 829 F. App'x at 583.  He provided no evidence of any
attempt to effect service of the original complaint before we issued a show-cause
order in March 2021.  (See Doc. 4).  Nor did he formally move for an enlargement of
the amended April 22, 2021 deadline at any time, despite the court's warning in its
show-cause order.  (See Docs. 5, 7).  Cienciva also has not demonstrated any
attempts throughout this litigation to effect personal service of the amended
complaint on the 11 additional defendants, see Micklus, 632 F.2d at 240, even

though Cienciva initially responded to the court's show-cause order by requesting more time to "personal[ly] serve" the complaint, (see Doc. 5 ¶ 14).

Despite Cienciva's failure to show good cause, "other factors" counsel in favor of an extension.  See Petrucelli, 46 F.3d at 1307.  This case typifies the sometimes-complex "requirements of multiple service in actions against the United States or its officers."  See FED. R. CIV. P. 4 advisory committee notes, 1993 amendment, subdivision (m); see also Veal, 84 F. App'x at 256 (noting that service against the United States in Federal Tort Claims Act suit was "of a kind often found to be confusing").  While Cienciva is not a *pro se* litigant, the two-year statute of limitations has run on his remaining claim for damages pursuant to Bivens, and expiration of the statute of limitations favors an extension.  See Boley, 123 F.3d at 759.  Furthermore, government counsel's October 2021 entry of appearance for all defendants indicates they now have actual notice of the lawsuit Cienciva has filed against them.  (See Docs. 29, 30); see also Chiang, 331 F. App'x at 116.

For all of these reasons, we exercise our discretion and deem the late-served amended complaint on the United States to be timely.  Our decision works no prejudice to Brozowski, who waived service through counsel and clearly had actual notice of the suit.  (See Doc. 8).  We decline, however, to grant Cienciva another opportunity to personally serve the 11 additional defendants named in the amended complaint, because as discussed below, doing so would be futile in light of the amended complaint's failure to relate back to the original complaint.

## C.      Amendment and Relation Back

The additional defendants also seek dismissal based on a statute of limitations defense, arguing Cienciva's amended complaint, filed after the statute of limitations expired, does not relate back to his original complaint.  (See Doc. 38 at 14-17).[4]  Rule 15 of the Federal Rules of Civil Procedure governs amendment of pleadings, and amendments generally take effect when they are filed.  See FED. R. CIV. P. 15.  Hence, amending a pleading to append a new defendant after expiration of the limitations period is ineffective unless the amendment relates back to the date that the original complaint was filed.  See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001) (citing Nelson v. County of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995)).

An amendment relates back if three conditions imposed by Rule 15(c) are satisfied.  First, the claim against the new defendant must "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  See FED. R. CIV. P. 15(c)(1)(B); see also Singletary, 266 F.3d at 194.  Second, the newly identified defendant must receive notice of the action "within the period provided by Rule 4(m)"—90 days—such that they will not incur prejudice by defending the suit on the merits.  See FED. R. CIV. P. 15(c)(1)(C)(i); FED.

---

[4] The parties agree that Cienciva's cause of action accrued on his arrest date of March 12, 2019, and that his suit is governed by a two-year statute of limitations. (See Doc. 43 at 6; Doc. 45 at 10); see also Montalban v. Powell, 799 F. App'x 111, 112 (3d Cir. 2020) (nonprecedential) (citing Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010) (Bivens claims governed by state statute of limitations for personal injury claims, which is two years in Pennsylvania)); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (same for Section 1983 claims).

R. Civ. P. 4(m); see Singletary, 266 F.3d at 194; see also Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 458 (3d Cir. 1996) (noting plaintiff must show *both* notice and absence of prejudice).  Third, "the newly named party must have known, or should have known, (again, within the [90]-day period) that 'but for a mistake' made by the plaintiff concerning the newly named party's identity, 'the action would have been brought against' the newly named party in the first place."  See Singletary, 266 F.3d at 194 (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)).

In the instant matter, the claims against additional defendants arise from the same transaction or occurrence as the claims against Brozowski, the originally named defendant.  According to the amended complaint, all defendants participated in the arrest and purported beating of Cienciva on March 12, 2019. (See Doc. 22 ¶¶ 27, 30).  Cienciva has therefore satisfied the first condition for relation back.  Cf. Fed. R. Civ. P. 15(c)(1)(B).

The second condition requires that the additional defendants receive notice of the action within 90 days after the filing of the original complaint and that these defendants incur no prejudice in defending the suit on the merits.  See Urrutia, 91 F.3d at 458.  Our court of appeals understands "the period provided by Rule 4(m)" to mean 90 days "of institution of the action" or "commencement of the case."  See Arthur v. Maersk, Inc., 434 F.3d 196, 207 (3d Cir. 2006).  A new defendant may receive constructive notice sufficient to comply with the requirements of Rule 15(c) under the "shared attorney" method, whereby a newly added defendant will be deemed to have notice of a claim if "the originally named party and the party who is sought to be added are represented by the same attorney."  See Singletary, 266 F.3d

at 196.  To employ this method, the plaintiff "must show that there was 'some communication or relationship'" between the shared attorney and the new defendant within the 90-day period.  See Garvin v. City of Philadelphia, 354 F.3d 215, 225 (3d Cir. 2003) (quoting Singletary, 226 F.3d at 196-97); see also Walters v. Muhlenburg Twp. Police Dep't, 536 F. App'x 213, 216 (3d Cir. 2013) (nonprecedential) (affirming dismissal because no facts indicated original and new defendants had same attorney during the relevant time period); Estate of Kamal v. Township of Irvington, 790 F. App'x 395, 397 (3d Cir. 2019) (nonprecedential) (same).

Cienciva instituted this action on November 4, 2020.  (See Doc. 1).  We also provided Cienciva a 30-day extension under Rule 4(m) to perfect service by April 22, 2021.  (See Doc. 8).  Cienciva moved for no other extensions to effect service.  Thus, for purposes of relation back, Cienciva must show that additional defendants had notice of the suit, at the latest, by April 22, 2021.  See Urrutia, 91 F.3d at 458; Arthur, 434 F.3d at 207.  However, Cienciva submits no evidence to establish that actual or constructive notice occurred.[5]  According to the record, government counsel

---

[5] We reject Cienciva's argument that he filed his amended complaint "21 days before the deadline under Rule 15."  (See Doc. 43 at 6).  Our court of appeals consistently holds that the deadline pursuant to Rule 15(c)(1)(C)(i) begins to run at "institution of the action" or "commencement of the case."  See Arthur, 434 F.3d at 207.  Here, the date of commencement is November 4, 2020.  (See Doc. 1).  Cienciva filed his amended complaint on June 29, 2021, or 69 days after the expiration of his extended deadline to serve the complaint.  (See Docs. 7, 22).  We are aware of no case law—and Cienciva cites none—holding that the Rule 15 deadline allows an additional 90 days *beyond* an already extended service deadline ordered under Rule 4(m).

entered an appearance for only Brozowski on March 18, and Cienciva filed a waiver of service for Brozowski on April 6. (See Docs. 6, 8). The record is devoid of any facts to indicate that the 11 additional defendants had actual notice of suit by April 22, 2021. Nor has Cienciva shown that government counsel had "some communication or relationship" with additional defendants during this timeframe. Cf. Garvin, 354 F.3d at 225; Walters, 536 F. App'x at 216; Estate of Kamal, 790 F. App'x at 397. The record reflects that the parties submitted a joint case management plan on June 9, 2021, and this document contained the names of all defendants Cienciva added to his amended complaint. (See Doc. 17). On the same day, Brozowski served initial disclosures. (See Doc. 45-2 at 1-2). Thus, for Cienciva's amendment to relate back pursuant to the shared attorney rule, we would need to find "some communication or relationship" occurred between Brozowski's counsel and all additional defendants over *six weeks* prior to the initial disclosures. But Cienciva has failed to provide such evidence—or any evidence at all—of such an occurrence. He instead insists that government counsel's appearance for additional defendants on October 15, 2021, should be sufficient. Our court of appeals instructs that it is not, and we "decline [Cienciva's] invitation to pile assumption on top of assumption" to conclude that additional defendants received some sort of notice of this suit on or before April 22, 2021. Cf. Garvin, 354 F.3d at 227.

In light of these facts, the court concludes that notice of Cienciva's suit cannot be imputed from Brozowski to additional defendants under the shared attorney method. Therefore, the additional defendants did not receive notice of

Cienciva's claims within the period prescribed by Rule 15.  Our court of appeals requires a plaintiff to meet all three conditions of Rule 15(c) before an amendment will relate back to the original complaint.  See Singletary, 266 F.3d at 194. Cienciva's failure to establish the second condition is therefore fatal to his relation-back argument.  Accordingly, the court will dismiss as time-barred the claims against defendants Alstrom, Little, Persun, Holst, Connors, Hegedus, Ference, Spiegel, Docket, Denucci, and Martin.  Cf. Singletary, 266 F.3d at 193.[6]

### D.    **Bivens** **Remedy**

At this juncture, Cienciva's only remaining claim is a potential Bivens claim for excessive force against Brozowski in his individual capacity.  In Bivens, the Supreme Court of the United States recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983.  See Bivens, 403 U.S. at 397.  More than 50 years have passed since Bivens was handed down in June 1971.  In that time, the Court has extended the Bivens remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and

---

[6] In his sur-reply, Cienciva argues for the first time that he satisfied the notice requirement pursuant to Rule 15(c)(2) regarding "Notice to the United States." (See Doc. 48 at 3-4); see also FED R. CIV. P. 15(c)(2).  Cienciva failed to raise this theory in his opposition brief, and we therefore consider it waived.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. 2005) (citing United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (citing In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003))).

Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

The Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. ___, 137 S. Ct. 1843 (2017) sets forth a two-part test for determining whether a prospective Bivens claim may proceed.  First, courts must ascertain whether the case presents a "new context."  See id. at 1859.  If the case differs "in a meaningful way from previous Bivens cases decided by th[e Supreme] Court, then the context is new." Id.  And the meaning of "new context" is "broad."  See Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 743 (2020).  Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the Bivens remedy.  See id.  This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  See Egbert v. Boule, 596 U.S. ___, 142 S. Ct. 1793, 1803 (2022) (quoting Abbasi, 137 S. Ct. at 1858).  If a court concludes that "even a single reason" exists to pause "before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist and a Bivens remedy does not lie.  See id. (quoting Hernandez, 140 S. Ct. at 743) (internal quotation marks omitted); Hernandez, 140 S. Ct. at 743.

The Supreme Court's decision in Egbert v. Boule, 596 U.S. ___, 142 S. Ct. 1793 (2022), handed down just last month, reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new Bivens cause of action is "a disfavored judicial activity."  See Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 137 S. Ct. at 1857;

Hernandez, 140 S. Ct. at 742-43).  Egbert clarified that the two-step process laid out

in Abbasi "often resolve[s] to a single question: whether there is any reason to think

that Congress might be better equipped to create a damages remedy."  See id. at

1803.  In other words: if there is "*any* rational reason (even one) to think that

*Congress* is better suited" to determine the propriety of a cause of action, then a

Bivens action cannot proceed.  See id. at 1805.  The court must broadly inquire

whether "there is any reason to think that 'judicial intrusion' into a given field

might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even

*potentially* yes, the plaintiff cannot recover under Bivens.  See id. (quoting United

States v. Stanley, 483 U.S. 669 681 (1987)).  Mindful of Egbert's recent clarification

and emphasis on the presence of special factors, we proceed with Abbasi's two-step

analysis.

        1.    *New Context*

     Cienciva summarily contends that his claim "falls squarely within the

parameters of Bivens . . . because Bivens was decided under a Fourth Amendment

theory," and Cienciva alleges a claim for excessive force pursuant to the Fourth

Amendment.  (See Doc. 43 at 8, 9).  Of the three cases in which the Supreme Court

has recognized Bivens claims, only Bivens itself—involving a Fourth Amendment

claim for unreasonable search and seizure—is relevant.  In Bivens, a plaintiff

brought suit alleging that agents from the (now-defunct) Federal Bureau of

Narcotics entered his home, arrested him, handcuffed him in front of his wife and

children, and searched the home "from stem to stern" before subjecting him to a

visual strip search—all without a warrant.  See Bivens, 403 U.S. at 389.  The

Supreme Court held that "damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials," and thereby created an action for money damages in such cases.  See id. at 395.

To be sure, Cienciva's claim possesses many factual similarities to those in Bivens.  Both cases involved an arrest by federal agents, and both plaintiffs alleged unreasonable force during that arrest in contravention of the Fourth Amendment. (See Doc. 22 ¶¶ 31-35); see also Bivens, 403 U.S. at 389.  But the Supreme Court has recently made clear that "superficial similarities" or even "almost parallel circumstances" are not necessarily sufficient to state a claim pursuant to Bivens. See Egbert, 142 S. Ct. at 1805 (quoting Abbasi, 137 S. Ct. at 1859).  We conclude that Cienciva's claim presents a new context because of  at least one key factual difference: Bivens involved narcotics agents who arrested the plaintiff and searched the residence sans warrant; the defendants here acted pursuant to a valid arrest warrant after Cienciva failed to report to Lackawanna County Prison.  (See Doc. 22 ¶¶ 9-14; Doc. 43-1 at 12).  We join several other district courts to hold, post-Abbasi, that the presence of a warrant is a crucial difference in the Bivens new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in Bivens. See, e.g., Young v. City of Council Bluffs, 569 F. Supp. 3d 885, 893-94 (S.D. Iowa 2021); Xiaoxing Xi v. Haugen, No. CV 17-2132, 2021 WL 1224164, at *17 (E.D. Pa. Apr. 1, 2021); Style v. Mackey, No. 17CV1691ENVSJB, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020); Rivera v. Samilo, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019); but see Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) (arrest

pursuant to warrant not "meaningfully different" from <u>Bivens</u>).  Given the "broad"
meaning of "new context," Cienciva's claim for excessive force against U.S.
Marshals executing a valid arrest warrant presents a new context.  <u>See</u> <u>Hernandez</u>,
140 S. Ct. at 743.

### 2.  *Special Factors*

Having concluded Cienciva's claim presents a new context, we must
determine whether "there are any special factors that counsel hesitation" in
extending <u>Bivens</u>.  <u>See</u> <u>Hernandez</u>, 140 S. Ct. at 743 (internal quotation marks and
alterations omitted) (quoting <u>Abbasi</u>, 137 S. Ct. at 1857).  If a court "ha[s] reason to
pause before applying <u>Bivens</u> in a new context or to a new class of defendants,"
then special factors counseling hesitation exist.  <u>See</u> <u>Hernandez</u>, 140 S. Ct. at 743.

We briefly recount the facts in <u>Egbert</u>, as the Court's decision drives our
analysis here.  Plaintiff Robert Boule operated a bed-and-breakfast within feet of
the United States-Canadian border, and in March 2014 informed a United States
Border Patrol agent that a Turkish national expected to travel to Boule's business.
<u>See</u> <u>Egbert</u>, 142 S. Ct. at 1800-01.  That same day, the agent followed a vehicle onto
Boule's property after observing an individual he believed to be the Turkish
national in the vehicle.  <u>See</u> <u>id.</u> at 1801.  During the ensuing altercation between
Boule and the agent, the agent "lifted [Boule] off the ground and threw him against
the" vehicle.  <u>See</u> <u>id.</u>  Boule formally complained to the agent's supervisors about
this purported excessive force and filed an administrative claim under the Federal
Tort Claims Act ("FTCA").  <u>See</u> <u>id.</u> at 1801-02.  Thereafter, the agent allegedly
retaliated against Boule for complaining by contacting the Internal Revenue

Service and the state Department of Licensing.  See id. at 1802.  Boule later sued the agent pursuant to Bivens, alleging excessive force in violation of the Fourth Amendment as well as retaliation in violation of the First Amendment.  See id.

In declining to recognize a Bivens remedy, the Supreme Court focused on the inherent conflict "between judicially created causes of action and the Constitution's separation of legislative and judicial power."  See id. at 1802 (quoting Hernandez, 140 S. Ct. at 741).  The Court held that no Bivens remedy would lie "for two *independent* reasons."  See id. at 1804 (emphasis added).  First, the Court declared the case implicated national security concerns and concluded the courts are "comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate."  See id. at 1805.  Second, the Court underscored that alternative remedies existed for the misconduct at issue.  See id. at 1806-07.  It noted the "Border Patrol is statutorily obligated to 'control, direc[t], and supervis[e] . . . all employees" and "must investigate 'alleged violations of the standards for enforcement activities.'"  See id. at 1806 (citations omitted).  And the Court again deferred to congressional choice regarding the adequacy of this remedy, stating "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  See id. at 1807.

We read the Egbert decision to further extend the Court's longstanding view that "when alternative methods of relief are available, a Bivens remedy usually is not."  See Abbasi, 137 S. Ct. at 1863 (citing Bush v. Lucas, 462 U.S. 367, 386-88

(1983); <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 425–26 (1988); <u>Corr. Servs. Corp.</u>
<u>v. Malesko</u>, 534 U.S. 61, 73–74 (2001); <u>Minneci v. Pollard</u>, 565 U.S. 118, 125-26
(2012)).[7] The Court made clear that an alternative remedy in such an instance need
not "afford rights to participation or appeal," because a court should defer to
congressional or executive choices in erecting a remedial process, rather than
conduct its own independent assessment of government procedures. <u>See</u>
<u>Egbert</u>, 142 S. Ct. at 1806. Having thoroughly reviewed the <u>Egbert</u> decision, we are
constrained to conclude that an alternative available remedy exists for Cienciva
within the legal mandates of the United States Marshals Service, in much the same
way the Court concluded one existed for Boule. <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1806-07.
By statute, the Director of the Marshals must "supervise and direct the United
States Marshals Service in the performance of its duties." <u>See</u> 28 U.S.C. § 561(g).
By regulation, the Director "shall direct and supervise . . . [i]nvestigations of alleged
improper conduct on the part of U.S. Marshals Service personnel." <u>See</u> 28 C.F.R.
§ 0.111(n). That our own independent consideration of the adequacy of such an
investigation or process may question its deterrent effects is of no moment; the
<u>Egbert</u> decision admonishes us not to graft a judicial remedy onto an existing

---

[7] We disagree with defendants' insistence that the FTCA stands as an
alternative that forecloses a <u>Bivens</u> remedy. (<u>See</u> Doc. 38 at 26-29; Doc. 45 at 14-17).
The FTCA's exclusive remedy provision does not apply to suits "brought for a
violation of the Constitution of the United States." <u>See</u> 28 U.S.C. § 2679(b)(2)(A).
The Supreme Court has long considered it "'crystal clear' that Congress intended
the FTCA and <u>Bivens</u> to serve as 'parallel' and 'complementary' sources of liability.
<u>See</u> <u>Malesko</u>, 534 U.S. at 68; <u>see also</u> <u>Egbert</u>, 142 S. Ct. at 1822 n.7 (Sotomayor, J.)
(concurring in part).

grievance process that "independently foreclose[s]" a <u>Bivens</u> cause of action.  <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1806.

Even assuming the statutory and administrative directive to investigate alleged improper conduct does not constitute an alternative remedy, we must still consider whether there are other factors—in particular, separation-of-powers concerns—that weigh against creating a <u>Bivens</u> remedy to fill the void.  <u>See</u> <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007).  The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?"  <u>See</u> <u>Abbasi</u>, 137 S. Ct. at 1857.  In <u>Egbert</u>, the Supreme Court underscored that "even one" reason to believe the federal legislature is better equipped to provide a damages remedy means a <u>Bivens</u> action cannot proceed.  <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1805.

The Supreme Court has never extended <u>Bivens</u> to claims against Marshals for use of excessive force.  Nor has it recognized a cause of action against federal officials executing a lawful arrest warrant.  According to <u>Egbert</u>, we must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be potentially 'harmful' or 'inappropriate.'"  <u>See</u> <u>id.</u> at 1805.  The "primary role and mission" of the Marshals is to "provide for the security and to obey, execute, and enforce all orders of" the federal judiciary.  <u>See</u> 28 U.S.C. § 566(a).  Implying a damages remedy for excessive force in Cienciva's case is potentially harmful to the duty of the Marshals Service to make judgment calls about the use of force needed to execute a judicially authorized arrest warrant.  <u>See</u> <u>Young</u>, 569 F. Supp. 3d at 893-94; <u>see also</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 96 (3d Cir. 2018) (refusing to imply <u>Bivens</u> remedy in prison discipline context).  We conclude

Congress is better equipped to determine the contours of a damages remedy than the courts, and Cienciva's claim cannot proceed.

**IV.    Conclusion**

We will grant the defendants' motion to dismiss the amended complaint. An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:    July 15, 2022